IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN GRAHAM<br>Individually and on Behalf of All<br>Others Similarly Situated,<br><br>     Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC<br>[Serve at:<br>1601 S. California Ave.<br>Palo Alto, CA  94304]<br><br><br><br>DOES 1 THROUGH 10,<br><br>Defendants. | Case No: 11-cv-2556 JTM/KMH<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, on behalf of himself and all others similarly situated, alleges and avers as follows:

### INTRODUCTION

1. This class action arises out of improper and unlawful actions by the Defendants who participated in a scheme to intercept, endeavor to intercept, or procure the Plaintiff and the Class members' personal information as prohibited by law and by agreement.

2. Plaintiff and the Class members are individuals who subscribe to the online social media site Facebook.

3. Facebook maintains personal information pertaining to each individual subscriber as well as monitors the individual online habits of its users, thereby keeping track

4. Upon obtaining personal information and/or wire or electronic communications of the Plaintiff, Facebook conspired to use said information for target marketing which pertained to the Plaintiff and the individual Class members, over the Internet.

5. Such conduct was committed in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 as amended by the Electronic Communication Privacy Act of 1986, 18 U.S.C. § 2511, *et seq.* (the "Wiretap Act"), and by the specific terms of the Facebook subscription.

## PARTIES

### Plaintiffs

4. Plaintiff John Graham is an individual who resides at 3524 W. 92nd St., Leawood, Kansas, 66206. Upon information and belief, Defendants intercepted, collected and stored personal information from Plaintiff.

### Defendants

5. Defendant is a company organized and existing under the laws of Delaware with is principal place of business at 1601 S. California Ave. Palo Alto, California. 94304. Upon information and belief, Facebook, Inc. owns and/or operates websites including www.facebook.com, which offer online social interaction and picture storage. Facebook is not registered with the Kansas Secretary of State to do business in Kansas.

6. Defendants Doe 1 through 10 are the remaining directors, employees, agents, or contractors of Facebook that are yet to be named and whose identity will become

known through discovery and/or by requests made by Plaintiff or the members of the plaintiff class, after which such remaining defendants will be added as individual defendants.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action and all the defendants pursuant to 28 U.S.C. § 1331 in that this action arises under statutes of the United States, specifically violations of the "Wiretap Act".

8. Additionally, this Court has personal jurisdiction over Defendant Facebook, Inc. pursuant to K.S.A. § 60-308 because Facebook, Inc. transacted business and made contracts in Kansas directly through the website www.facebook.com, violated the law within the state of Kansas, committed a tortious act within Kansas, and otherwise has sufficient minimum contacts with the state of Kansas as more particularly described below.

9. This Court also has jurisdiction pursuant to K.S.A. § 50-638 as the Defendants engaged in consumer transactions within this state that form the basis for the causes of action alleged in this complaint.

10. Defendant Facebook, Inc. has sufficient minimum contacts such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice. Facebook has voluntarily submitted itself to the jurisdiction of this Court and jurisdiction is proper because, among other things:

   a. Facebook, Inc. directly and purposefully obtained, misappropriated and used personal information and/or information relating to wire or electronic communications of individuals living in Kansas, including the Plaintiff

and the individual Class members;

b. Facebook, Inc. committed tortuous acts within this state by misappropriating personal information and/or wire or electronic communications of citizens of Kansas and otherwise violating the Wiretap Act;

c. Plaintiff's and the Class members' causes of action directly arise from Facebook's commission of tortious and unlawful acts in Kansas;

d. Plaintiff's and the Class members' causes of action directly arise from Facebook's transaction of business in Kansas;

e. Facebook, Inc. should reasonably anticipate being haled into court in Kansas to answer for its unlawful acts. Kansas has a strong interest in providing a forum for its residents aggrieved by violations of the law.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because Plaintiff resides in this judicial district where a substantial part of the events giving rise to the claims at issue arose.

## GENERAL ALLEGATIONS

12. Defendant Facebook, Inc., operates a website, **www.facebook.com**, which is primarily a social networking site.

13. In conducting its business, Facebook, Inc. aggregates data on individual members of the public and uses that information in furtherance of marketing and advertising.

14. Facebook tracks, collects and stores wire or electronic communications of its users, including but not limited to their Internet browsing history.

15. Leading up to September 23, 2011, Facebook tracked, collected and stored its users' wire or electronic communications, including but not limited to portions of their Internet browsing history even when the users were not logged-in to Facebook.

16. Plaintiff did not give consent or otherwise authorize Facebook to intercept, track, collect and store his wire or electronic communications, including but not limited to his Internet browsing history when not logged-in to Facebook.

17. The electronic information procured by Facebook, Inc. while Plaintiff was not logged-in to Facebook contained personal information and/or wire or electronic communications of the Plaintiff.

18. At all times material, Defendant knew, or reasonably should have known, that their actions violated clearly established statutory rights of the Plaintiff and the Class members.

## CLASS ACTION ALLEGATIONS

19. This action is properly brought as a plaintiff class action pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiff brings this action on his own behalf and all others similarly situated, as representative of the following class and subclass:

> All individuals in the United States who subscribe to Facebook and whose electronic internet information was intercepted by Facebook when the individuals were not logged-in to Facebook.

Excluded from the Class are (1) any individual defendant who opts out of the class; (2) any member of the immediate family of any individual defendant; and/or (3) any member of the undersigned attorney's immediate families.

20. The particular members of the Class are capable of being described without

difficult managerial or administrative problems. The members of the Class are readily identifiable from the information and records in the possession or control of the defendants.

21. The Class members are so numerous that individual joinder of all members is impractical. This allegation is based upon information and belief that Defendant intercepted the personal information of millions of Facebook users of which there are more than 150 million in the United States.

22. There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual members of the Class, and, in fact, the wrongs suffered and remedies sought by Plaintiff and the other members of the Class are premised upon an unlawful scheme participated in by all defendants. The principal common issues include, but are certainly not limited to the following:

   a. The nature and extent of the Defendant's participation in intercepting the and/or wire or electronic communications of class members;

   b. Whether or not the interception of wire or electronic communications was intentional;

   c. Whether or not Defendant should be enjoined from intercepting any wire or electronic communications without the consent of its users;

   d. Whether the actions taken by Defendant in intercepting the wire or electronic communications of class members violate the Wiretap Act;

   e. The nature and extent to which the wire or electronic communications of Class members was unlawfully intercepted, tracked, stored or used;

  f. The nature and extent of the Class members actual damages;

  g. The nature and extent of all statutory penalties or damages for which the Defendant are liable to the Class members; and

  h. Whether punitive damages are appropriate.

23. Plaintiff's claims are typical of those of the Class and are based on the same legal and factual theories.

24. Plaintiff will fairly and adequately represent and protect the interests of the Class. He has suffered injury in her own capacity from the practices complained of and is ready, willing and able to serve as class representative. Moreover, Plaintiff's counsel is experienced in handling class actions and actions involving unlawful commercial practices. Neither Plaintiff nor his counsel has any interest that might cause them not to vigorously pursue this action.

25. Certification of a plaintiff class under Fed. R. Civ. P. 23(b)(3) is appropriate in that Plaintiff and the Class members seek monetary damages, common questions predominate over any individual questions, and a plaintiff class action is superior for the fair and efficient adjudication of this controversy. A plaintiff class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort and expense will be fostered and uniformity of decisions will be ensured. Moreover, the individual class members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against the likes of the defendants.

26. Alternatively, certification of a plaintiff class under Fed. R. Civ. P. 23(b)(1) is appropriate in that inconsistent or varying adjudications with respect to individual

members of the Class would establish incompatible standards of conduct for the defendants or adjudications with respect to individual members of the Class as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

## COUNT I
### (Violation of the Wiretap Act)

27. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

28. As described herein, Facebook, Inc. intentionally intercepted and collected wire or electronic communications from its users.

29. At times, Facebook, Inc. intercepted and collected information from its users without their consent while the users were not logged-in to Facebook.

30. The transmission of data between Plaintiff's computer and the Internet constitute "electronic communication" within the meaning of 18 U.S.C. § 2510(12).

31. Facebook's data collection practices as described herein constitute "interceptions" within the meaning of § 2510(4).

32. As a direct and proximate result of such unlawful conduct, Defendant violated 18 U.S.C. § 2511 in that the Defendants:

    a. Intentionally intercepted, endeavored to intercept, or procured another person to intercept wire and/or electronic communications of the Plaintiff;

    b. Upon belief predicated upon further discovery, intentionally disclosed or endeavored to disclose to another person the contents of Plaintiff's wire or electronic communications, knowing or having reason to know that the information was obtained through the interception of wire or electronic

        communications in violation of 18 U.S.C. §2511(1)(a).

    c.    Upon belief predicated upon further discovery, intentionally used or endeavored to use the contents of Plaintiff's wire or electronic communications, knowing or having reason to know that the information through the interception of wire or electronic communications in violation of 18 U.S.C. §2511(1)(a).

33.    Facebook Inc.'s actions described in ¶31 occurred without the consent of Plaintiff and violated Facebook Inc's own Privacy Policy per the following promises it made to users:

    a.    "We receive data whenever you visit a....website that uses Facebook Platform or visit a site with a Facebook feature....This may include the date and time you visit the site; the web address, or URL, you're on; technical information about the IP address, browser and the operating system you use; and, if you are logged in to Facebook, your User ID." *Facebook Data Use Policy*, available at http://www.facebook.com/full_data_use_policy as of October 4, 2011 and last updated September 23, 2011.

    b.    "Does Facebook use cookies if I don't have an account or have logged out of my account? When you log out of Facebook, we remove the cookies that identify your particular account, but we do use other cookies primarily to help keep you and others on Facebook safe and secure. For example, we use cookies to identify and disable the accounts of spammers and phishers, to prevent

        people who are underage from signing up with a false birth date, to help you recover your account if you lose access to it or it's compromised, to power our opt-in security features like Login Notifications and Login Approvals, and to help identify public computers so that we can discourage people from using "Keep me logged in." We may also use anonymized or aggregate information to improve our products. We also use cookies if you don't have a Facebook account, but have visited facebook.com. Again, these cookies help us protect Facebook and the people who use it from malicious activity. For example, they help us detect and prevent denial-of-service attacks and the mass creation of fake accounts. We do not use these cookies to create a profile of your browsing behavior on third-party sites. *Facebook Frequently Asked Questions*, available at permalink: "https://www.facebook.com/help/?faq=239530772765713#Does-Facebook-use-cookies-if-I-don't-have-an-account-or-have-logged-out-of-my-account?" on October 4, 2011

c.   "What information does Facebook receive when I visit a site with the Like button or another social plugin?..... If you're logged out or don't have a Facebook account and visit a website with the Like button or another social plugin, your browser sends us a more limited set of information. For example, because you're not logged in to Facebook, we don't receive your user ID." *Facebook*

>*Frequently Asked Questions*, available at permalink:
>
>"https://www.facebook.com/help/?faq=293506123997323#What-
>
>information-does-Facebook-receive-when-I-visit-a-site-with-the-
>
>Like-button-or-another-social-plugin?" on October 4, 2011.

34. Facebook Inc.'s actions described in ¶31 occurred without the consent of Facebook-affiliated websites, including, for example, the websites for the New York Times and Washington Post newspapers, in that.

    a. The interception and collection of information described in this paragraph caused the New York Times to violate its own Privacy Policy for its websites, including www.nytimes.com, which informs readers:

        i. "If you have registered online for one of our sites, The New York Times will not sell, rent, swap or authorize any third party to use your e-mail address without your permission. This also applies to any information that personally identifies you, except as noted immediately below;" and

        ii. "NYTimes.com will not share personal information about you as an individual to third parties without your consent."

    b. The interception and collection of information described in this paragraph caused the Washington Post to violate its own Privacy Policy for its websites, including www.washingtonpost.com, which informs readers:

        > Do other companies or people have access to personally identifiable information I provide to washingtonpost.com?

> When you are on an area of washingtonpost.com and are asked for personally identifiable information, you are providing that information to The Washington Post Company, its divisions or affiliates, or vendors providing contractual services for washingtonpost.com (such as hosting vendors and list managers). If personally identifiable information is being provided to and/or maintained by any company other than these, our policy is that we will not transfer that personally identifiable information unless notice is given prior to transfer. If you do not want your information to be shared, you can choose not to allow the transfer by not using that particular service or by expressing this preference, if requested.

35. Regardless of the consent from Plaintiff or the Facebook-affiliated websites, as may be alleged by Facebook, Inc., such consent was not valid because Facebook Inc.'s actions described herein were for the purpose of committing tortuous acts in violation of the laws of the United States or of any State. In taking its actions, Facebook, Inc. committed the following tortuous acts alleged in this petition:

   a. Unjust enrichment
   b. Intrusion upon Plaintiff's seclusion;
   c. Trespass to personal property;
   d. Tortious interference with a business expectancy;
   e. Breach of contract; and
   f. Violation of the Kansas Consumer Protection Act.

36. As a result of the above violations and pursuant to 18 U.S.C. § 2520, Defendant is liable to Plaintiff and the Class in the sum of statutory damages consisting of the greater of $100 for each day each of the class members' data was wrongfully obtained or $10,000.00 per violation; injunctive and declaratory relief; punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Facebook in the future, and a reasonable attorney's fee and other litigation costs reasonable.

## COUNT II
### (Unjust enrichment)

37. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

38. Plaintiff conferred a benefit on Defendant without Plaintiff's consent, namely access to his wire or electronic communications over the Internet.

39. Upon information and belief, Defendant realized such benefits through either sales to third-parties or greater knowledge of its own users' behavior without their consent.

40. Acceptance and retention of such benefit without Plaintiff's consent is unjust and inequitable.

## COUNT III
### (Intrusion upon seclusion)

41. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

42. In intercepting Plaintiff's wire and electronic communications on the Internet, Defendants intentionally intruded upon his solitude or seclusion.

43. Plaintiff did not consent to Defendant's intrusion.

44. Defendant's intentional intrusion on Plaintiff's solitude or seclusion without his

consent would be highly offensive to a reasonable person.

## COUNT IV
### (Trespass to Personal Property)

45. Plaintiff incorporates all preceding paragraphs as though set forth herein.

46. Defendant, intentionally and without consent or other legal justification, tracked Plaintiff's activity while the Plaintiff was logged-off of the website Facebook.com, and, in the process, connected Plaintiff's personally identifiable information to his specific actions on the Internet.

47. Defendant, intentionally and without consent or other legal justification, placed cookies on Plaintiff's computers which tracked his activity while logged-off of Facebook.

48. Defendant's intentional and unjustified placing of a cookie designed to track Plaintiff's Internet activities while logged-off of Facebook and actual tracking of Plaintiff's activities interfered with Plaintiff's use of the following personal property owned by the Plaintiff:

    a. Plaintiff's computer; and

    b. Plaintiff's personally identifiable information

## COUNT V
### (Tortious interference with a business expectancy)

49. Plaintiff incorporates all preceding paragraphs as though set forth herein.

50. Plaintiff had a valid business expectancy with Facebook-affiliated websites such as newyorktimes.com and washingtonpost.com that the affiliated websites would not share their personal identifiable information with third-parties without their express consent.

    a.    The Facebook-affiliate New York Times maintained a Privacy Policy for its websites, including www.newyorktimes.com during the period in which Defendant committed the acts alleged herein which contained the following promises to Plaintiff:

        i.    "If you have registered online for one of our sites, The New York Times will not sell, rent, swap or authorize any third party to use your e-mail address without your permission. This also applies to any information that personally identifies you, except as noted immediately below."

        ii.    "NYTimes.com will not share personal information about you as an individual to third parties without your consent."

    b.    The Facebook-affiliate Washington Post maintained a Privacy Policy for its websites, including www.washingtonpost.com during the period in which Defendant committed the acts alleged herein which contained the following promise to Plaintiff:

> Do other companies or people have access to personally identifiable information I provide to washingtonpost.com?
>
> When you are on an area of washingtonpost.com and are asked for personally identifiable information, you are providing that information to The Washington Post Company, its divisions or affiliates, or vendors providing contractual services for washingtonpost.com (such as hosting vendors and list managers). If personally identifiable information is being provided to and/or maintained by any company other than these, our policy is that we will not transfer that personally identifiable information unless notice is given prior to transfer. If you do not want your information to be shared, you can choose not to allow the transfer by not using that particular service or by expressing this preference, if requested. Additional information about personally identifiable information follows.

51.    Defendant knew or should of known of the business relationship and expectancy

...

between the Plaintiff and Facebook-affiliated sites through the affiliated-sites' publicly available Privacy Policies.

52. Defendant intentionally caused breach of the business relationship and expectancy between Plaintiff and Facebook-affiliated sites by placing 'cookies' on Plaintiff's computer which would allow Facebook to circumvent both its own and its affiliates' publicly-stated Privacy Policies.

53. Defendant's actions in interfering with the business relationships and expectations between Plaintiff and Facebook-affiliated were not justified.

54. Plaintiff suffered damage as a result of the Defendant's conduct.

## COUNT VI
### (Breach of Contract)

55. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

56. In exchange for allowing users to sign up for an account on its website, www.facebook.com, defendant Facebook, Inc. requires its users to agree to a form contract, which includes its Terms of Use and Privacy Policy.

57. The Privacy Policy provides that Facebook, Inc. does not track personal account information from its users without their consent while the users are not logged-in to Facebook.

58. Defendant Facebook, Inc. tracked, collected and stored its users' wire or electronic communications, including but not limited to portions of their Internet browsing history, even when the users were not logged-in to Facebook.

59. In so doing, Facebook, Inc. breached its contract with Plaintiff and the Class.

60. As a result of the breach of contract, Plaintiff and the Class suffered a substantial and ascertainable loss of money, property and/or other damages.

## COUNT VII
### (K.S.A. Chapter 50: Kansas Consumer Protection Act)

61. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

62. The Kansas Consumer Protection Act was enacted to prohibit, and protect persons from, deceptive, fraudulent and unfair conduct.

63. Defendant Facebook, Inc.'s operation of the website, www.facebook.com, constitutes "services" within the meaning of the Kansas Consumer Protection Act, K.S.A. § 50-624.

64. In transacting with its users, Facebook, Inc. intentionally intercepted and collected wire or electronic communications from its users without consent or authorization and disclosed such information to third-parties in exchange for money.

65. In failing to disclose such conduct or obtain consent from Plaintiff and the Class, Facebook, Inc. employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and omitted, concealed and suppressed material information and failed to inform Plaintiff and the Class of a material fact in connection with the use of www.facebook.com in violation of K.S.A. § 50-626 and § 50-627.

66. The aforementioned violations of the Kansas Consumer Protection Act have caused Plaintiff and the Class substantial and ascertainable loss of money, property and/or other damages.

67. Plaintiff has been forced to hire attorneys to enforce his rights under the Kansas Consumer Protection Act.

### PRAYER FOR DAMAGES

WHEREFORE, Plaintiff, on behalf of himself and all members of the Class respectfully prays for judgment against the defendants as follows:

a)  For an order certifying that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(3) or, in the alternative, Fed. R. Civ. P. 23(b)(1) and appointing Plaintiff and her counsel, to represent the Class and directing that reasonable notice of this action be given to all other members of the Class as necessary and appropriate;

b)  For a declaration that the Defendants, through their actions and misconduct as alleged above, have been unjustly enriched and an order that Defendants disgorge such unlawful gains and proceeds;

c)  For a declaration that the Defendants, through their actions and misconduct as alleged above, have committed trespass upon the personal property of Plaintiff and an order assessing damages against the Defendants for violations of Plaintiff's personal property rights;

d)  For a declaration that the Defendants tortiously interfered with a business expectancy of Plaintiff and Facebook-affiliated websites and an order assessing damages against the Defendants to compensate Plaintiff for harms caused by the Defendants' actions;

e)  That judgment be entered against Defendant for statutory damages pursuant to 18 U.S.C. §2520(c)(2)(B);

f)  That judgment be entered against Defendant for statutory damages pursuant to 18 U.S.C. §2520(b)(2);

g)  That Plaintiff and the Class recover pre-judgment and post-judgment interest as

        permitted by law;

h)    For an award to Plaintiff and the Class of their reasonable attorneys fees and other litigation costs reasonably incurred pursuant to 18 U.S.C. §2520(b)(3), K.S.A. § 50-634, or equity;

i)    That the court enter an order granting Plaintiff and the Class a preliminary and permanent injunction restraining and enjoining Defendant from any act to intercept electronic information from its users when they are not logged in and from disclosing any of the information already acquired on its servers;

j)    That the Court grant such other and further relief as may be just and proper;

## JURY DEMAND

Plaintiff demands that all issues so triable in this Complaint be tried to a jury.

Plaintiff designates Kansas City, Kansas as place of trial.

Dated this 5TH day of October, 2011.

        Respectfully submitted,

BY: _____
     STEPHEN M. GORNY     KS # 16984
     MICHELLE L. MARVEL     KS # 23511
     Bartimus, Frickleton, Robertson & Gorny, P.C.
     11150 Overbrook Road, Suite 200
     Leawood, KS 66211
     (913) 266-2300 (tel)
     (913) 266-2366 (fax)
     steve@bflawfirm.com
     mmarvel@bflawfirm.com

BARNES & ASSOCIATES

BY: /s/Randall O. Barnes
Randall O. Barnes, Mo. Bar #39884
219 East Dunklin Street, Suite A
Jefferson City, MO 65101
Ph: 573.634.8884
Fax: 573.635.6291
Email: rbarnesjclaw@aol.com
ATTORNEYS FOR PLAINTIFFS



BERGMANIS LAW FIRM, L.L.C.

BY: /s/Andrew S. Lyskowski
Erik A. Bergmanis, Mo. Bar #33151
Andrew S. Lyskowski, Mo. Bar #58307
Attorneys at Law
380 W. Hwy. 54, Ste. 201
P.O. Box 229
Camdenton, Missouri 65020
Phone: (573) 346-2111
Fax: (573) 346-5885
Email: alyskowski@ozarklawcenter.com
ATTORNEYS FOR PLAINTIFFS